**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| JT'S FRAMES, INC., an Illinois corporation, individually and as the representative of a class of similarly-situated persons, <br><br>　　　　　　Plaintiff, <br><br>　　v. <br><br>JESSE CASARES, JOE CASARES, PATRICIA BEZABALETA a/k/a PATRICIA ZABELETA, DAVID A. OZUNA, JOHN MEDINA, MARKETECH, a Texas corporation d/b/a INTERFAX.NET and 7915 WESTGLEN LLC, AVIGDOR TESSLER, JAY M. KAMENETSKY, ORIE RECHTMAN and JOHN DOES 1-10, <br><br>　　　　　　Defendants. | Civil Action No.: 1:16-cv-2504 <br><br>**CLASS ACTION** <br><br>Hon. Robert M. Dow, Jr. <br><br>Magistrate Hon. Jeffrey T. Gilbert |

**PLAINTIFF'S RESPONSE IN OPPOSITON TO MARKETECH DEFENDANTS' RULE 12(B)(1) AND 12(B)(6) MOTIONS TO DISMISS AND PLAINTIFF'S MOTION FOR LEAVE TO CONDUCT JURISDICTIONAL DISCOVERY**

Plaintiff, J.T. Frames, Inc. ("Plaintiff"), through its attorneys, submits this Response in Opposition to the Marketech Defendants' Rule 12(b)(1) and 12(b)(6) Motions to Dismiss, (Doc. 47, 48), and its Motion for Leave to Take Jurisdictional Discovery.

**I.　　Introduction.**

The instant putative class action arises from Plaintiff being sent an unsolicited fax advertisement (the "Fax") in violation of the Telephone Consumer Protection Act of 1991 ("TCPA" or "Act"), 47 U.S.C. § 227(b)(1)(C) between September 20, 2015 and October 6, 2015. On February 1, 2017, Plaintiff was given leave to file a Second Amended Complaint ("SAC"), adding as additional Defendants Marketech Corp. (Marketech"), 7915 Westglen LLC

("Westglen"), Avigdor Tessler ("Tessler"), Jay M. Kamenetsky, and Orie Rechtman ("Rechtman"). (*See* Docs. 37, 38).

On April 21, 2017, the additional Defendants filed three separate motions to dismiss, pursuant to Rules 12(b)(1), 12(b)(2), and 12(b)(6), each challenging standing, personal jurisdiction, and arguing the SAC failed to state a claim. The lineup as to these motions is as follows: Defendants Marketech, Tessler, and Kamenetsky ("Marketech Defendants") (Docs. 47, 48), Westglen (Docs 53, 54), and Rechtman (Docs. 50, 51). In support of their Rule 12(b)(2) and 12(b)(6) motions to dismiss, the Marketech Defendants have included Declarations from Defendant Tessler (Doc. 47-2) and Defendant Kamenetsky (Doc. 47-3). Defendant Westglen has also included the Tessler Declaration. (Doc. 53-1). Defendant Rechtman also relies upon the Tessler Declaration and submits his own declaration as well (the "Rechtman Declaration").

For the reasons that follow, Plaintiff requests leave to serve jurisdictional written discovery upon the Marketech Defendants, that Plaintiff be given leave to depose Tessler and Kamenetsky regarding their Declarations, and that Plaintiff be given leave to serve brief written jurisdictional discovery. [1]

## II.   Background.

### A.   The allegations in the SAC.

Plaintiff received the Fax advertising travel opportunities between September 20, 2015 and October 6, 2015. Plaintiff alleges in the SAC that Defendants Jesse Casares, Joe Casares, Patricia Bezabaleta, residents of Texas, own and operate a travel agency (the "Travel Agency"), and that David Azuna and John Medina, also residents of Texas, assist in the operation of the Travel Agency and obtain "monetary benefits from the sale of the Travel Agency's products

---

[1] Based on the averments in the Rechtman Declaration, and certain averments in the Tessler Declaration, Plaintiff intends to dismiss Mr. Rechtman and 7915 Westglen LLC without prejudice in a separate filing today.

2

goods and services" (collectively referred to the "Travel Agency Defendants"). (SAC ¶¶ 13-16). The Fax is an advertisement of the Travel Agency, promoting an "End of Summer Super Sale" for a variety of vacation destinations. (*Id.* ¶ 26). The Fax does not contain a compliant opt out notice as defined by 47 C.F.R. § 64.1200(a)(4)(iii). (*Id.*)

Plaintiff alleges on information and belief that the Fax was created by the Travel Agency Defendants in order to generate sales for the Travel Agency, and that the Travel Agency Defendants "had direct and personal participation in creating the content of the Fax and in the decision of sending the Fax in violation of the TCPA." (*Id.* ¶¶ 27, 28). As to Defendants Marketech, Tessler, and Kamenetsky, the SAC alleges the following on information and belief:

- Marketech, a Texas corporation, is a fax broadcaster as defined by 47 C.F.R. § 64.1200(f)(7), and that Marketech also does business as Interfax.net. (SAC ¶ 17).

- Tessler, a resident of Texas, is the President and CEO of both Marketech and Westglen and at all times relevant to this matter, Tessler held these positions. (*Id.* ¶ 19)

- Kamenetsky, also a resident of Texas, is the Vice President of Sales for Marketech and, at all times relevant to this matter, held that position. (*Id.* ¶ 20)

- Marketech and Westglen, as fax broadcasters, physically transmitted the Fax to Plaintiff (*Id.* ¶ 29)

- Marketech and Westglen selected Plaintiff's fax number from a database of recipient fax numbers that they maintain and use, and they (Marketech and Westglen) actively solicit third party advertisers to compile their database. (*Id.* ¶ 30)

- Marketech and Westglen determined the number and frequency of transmissions for the Fax. (*Id.* ¶ 31)

- Marketech and Westglen created and were responsible for the opt-out notice on the Fax. (*Id.* ¶ 32)

- Marketech and Westglen also handled the opt-out requests for the Fax, and the phone number provided on the Fax for removal of fax numbers is their phone number. (*Id.* ¶ 33)

- Tessler and Kamenetsky had direct and personal participation in creating the opt-out notice for the Fax, handling the opt-out requests for the Fax, in the decision of

3

sending the Fax, maintaining and using the database of recipient fax numbers to which the Fax was sent, and in determining the number and frequency of transmissions for the Fax. (*Id*. ¶ 34)

### B. The Marketech Defendants' motions to dismiss.

Defendants Marketech, Tessler, and Kamenetsky have moved to dismiss pursuant to, *inter alia*, Rule 12(b)(2), arguing they lack sufficient contacts with Illinois to establish either general or specific jurisdiction. In particular, the Marketech Defendants claim none of them have had any contact with Illinois, do not reside in Illinois, do not have a place of business in Illinois, have no customers in Illinois, derive no revenue or income from Illinois, own or rent property in Illinois, or maintain a bank account in Illinois. (Marketech Defs.' Br. at 1). The Marketech Defendants further assert that they have never "interacted (whether on a business or personal level) with any of the Travel Agency Defendants[,]" and that "[n]one of the Marketech Defendants had any involvement whatsoever in the content, design, transmission or opt-out features of the 'junk fax' complained of by the Plaintiff." (*Id.* at 1, 2)

In support of these factual assertion, the Marketech Defendants rely upon, *inter alia*, the Tessler Declaration and the Kamenetsky Declaration. (*See* Marketech Defs.' Br. at 6-9). The Tessler Declaration states, in part, that Marketech "does not, nor has it ever, provided services to any travel related business," Doc. 47-2 ¶ 7, and that "because Marketech is not a fax broadcasting service, Marketech does not create or maintain any 'database' of fax recipients nor does it solicit any third party to do so on Marketech's behalf," *id*. at 8. The Tessler Declaration recognizes the company called InterFax US, Inc. ("InterFax US"), stating it is a subsidiary of Interfax Communications Ltd., a company in Ireland, and that InterFax US is a customer on

4

Marketech. (*Id*. at 10).² Tessler states that to the best of his knowledge, Marketech has not "conducted any business, signed any contracts with, employed, or had any contact or interactions with [the Agency Defendants]." (Tessler Decl., at ¶ 12, Tessler states that the only current tenant at 7915 Westglen is Marketech. (*Id.* at 22).

Kamenetsky avers that he has been the Vice President for Sales for Marketech since 2013, and that Marketech "provides marketing and sales services to companies on an outsourced basis." (Kamenetsky Decl., Doc. 47-3, at ¶¶ 3, 5). He also states that InterFax ³is a customer of Marketech, *id*. at ¶ 6, that he has "not provided any services on behalf of Marketech to any kind of travel agency or travel related company during my employment with Marketech, id. at 7, and that "Marketech does not provide fax broadcasting services to any client," *id*. at ¶ 8. Finally, Kamenetsky states he "never participated in any way with any person, persons or entity with respect to Exhibit A regarding any opt-out notice or regarding the timing, frequency or recipient or recipients of Exhibit A," and that neither of the phone numbers on the Fax are "associated with me, are owned or controlled by me," and that "neither of the telephone numbers depicted on [the Fax] are associated with Marketech or any Marketech client with which I am familiar." (*Id*. at ¶¶ 10, 11).

C. **Additional relevant factual information.**

Following jurisdictional discovery (if permitted by the Court), Plaintiff intends to file a motion for leave to file a Third Amended Complaint ("TAC"), which proposes to add InterFax US as a Defendant, and which removes as Defendants 7915 Westglen and Mr. Rechtman. Following are certain current facts Plaintiff intends to allege in the proposed TAC.

---

² Marketech Defendants attach Texas Secretary of State Business Organization Inquiry of Foreign For-Profit Corporation for InterFax US which shows it was incorporated in Texas on March 3, 2017 (approximately one month after Plaintiff was given leave to file SAC). Doc. 47-6.
³ Kamenetsky's Declaration does not distinguish Interfax Communications Ltd. and InterFax US.

5

1. **Marketech**

On its website, www.marketechcorp.com, Marketech in a section styled "Research Team" states the following:

> **Main Goal** – Generate a constant flow of targeted prospect lists for our campaign team.
>
> \* \* \*
>
> **Tools** – We subscribe to the most advanced and complete on-line databases that are available in the market. Our engineers have developed several different data mining tools that allow us to search online and sort out the most accurate leads that fit the targeted profiles. We join associations, we purchase trade show attendees list and other [sic] any other tool necessary to make initial contact with your target profiles.
>
> **Summary** – Our research team crunches numbers, meticulously analyzes your market, <u>and then creates and generates lists of target prospects</u>. This team digs deep into the customer industry, as well as the job titles of customers, and ultimately is responsible for obtaining an extensive list filled with contact information for the campaign team to reach out to.

(Portions of Marketech's website, www.marketcorp.com, attached as Group Exhibit A, at 1).

Marketech's website identifies InterFax as a client. (Group Ex. A at 12-14). Marketech states it is located at 7915 Westglen Dr., Houston, TX 77063. (*Id*. at 2). In "Latest News," Marketech states that on 19 January 2017, it was scheduled to attend HIMSS annual conference in Orlando, FL on behalf of InterFax, and that "several key members will be on hand to meet with customers and prospects to explain InterFax's unique highly secured internet faxing services and secure HIPAA document upload & management system." (*Id*. at 15). Defendant Jay Kamenetsky is listed a Vice President of Sales for Marketech. (*Id*. at 5-6).

2. **InterFax US**

In its SAC, Plaintiff alleged on information and belief that Marketech was doing business as InterFax US. (*See* SAC ¶ 17). Although InterFax's address is the same as Marketech – 7915 Westglen Dr., Houston, TX, *see* portions of InterFax US's website www.interfax.net, attached as

Group Exhibit B, at 3, further research indicates that Jay Kamenetsky, also serves as Vice President of Sales for InterFax, and that Interfax is a fax broadcaster. (*See* Kamenetsky LinkedIn Profile, attached as Exhibit C). On its website, www.interfax.net, InterFax also states:

> The InterFAX online fax service lets you perform bulk fax broadcasting services to thousands of users easily and reliably – send marketing materials, newsletters or any other document via our fax servers distributed on four continents, with full cost control and 1-click resend of failed faxes.
>
> ✔ Distribute up to 20,000 faxes per list
> ✔ Manage lists and review fax broadcasting results online
> ✔ User-friendly Web Fax Mail Merge
> ✔ Customize your message for individual recipients
> ✔ 1-click resend of failed faxes
> ✔ Competitive pricing with no setup fees
>
> \*     \*     \*
>
> **Easy Bulk Fax Broadcasting**
>
> Our online fax broadcasting service lets you distribute marketing materials, sales collaterals, newsletters, or any other document to a mass audience. Our fax severs rapidly distribute thousands of faxes – for example, transmitting a one-page fax to 10,000 recipients may take between 1.5 and 3.5 hours.

(Group Ex. B at 5).

Plaintiff believes the foregoing will support allegations that Defendants Marketech and InterFax, working together as agents for each other and for the Travel Agency Defendants, created the fax list or lists to which Exhibit A was sent, determined the number and frequency of transmissions for the Fax, and created and were responsible for the opt-out notice on the Fax. Plaintiff further believes the foregoing will support allegations that Defendants Tessler and Kamenetsky had direct and personal participation in one of the following: creating the opt-out notice for the Fax, handling the opt-out requests for the Fax, the decision of where to send the

7

Fax, maintaining and using the database of recipient fax numbers to which the Fax was sent, and in determining the number and frequency of transmissions for the Fax.

### III. Argument

#### A. Standards for Rule 12(b)(2) motions to dismiss based on lack of personal jurisdiction.

"A complaint need not include facts alleging personal jurisdiction." *Purdue Research Foundation v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). However, once the defendant moves to dismiss the complaint pursuant to Rule 12(b)(2) based on lack of personal jurisdiction, the plaintiff bears the burden of demonstrating the existence of jurisdiction. *Id.* The precise nature of the evidentiary burden depends on whether an evidentiary hearing has been held. *Id.* When the district court holds an evidentiary hearing to determine jurisdiction, the plaintiff must establish jurisdiction by a preponderance of the evidence. *Id.* However, when the district court rules on a defendant's motion to dismiss based on the submission of written materials, without benefit of an evidentiary hearing, the plaintiff need only make out a *prima facie* case of personal jurisdiction. *Id.*

"Generally, courts grant discovery on the jurisdictional issue if the plaintiff can show that the factual record is at least ambiguous or unclear on the issue." *Wells v. Hospital Group of Illinois, Inc.*, 2003 WL 21704416, at *3 (N.D. Ill. July 23, 2003) (citing *Andersen v. Sportmart, Inc.*, 179 F.R.D. 236, 242 (N.D. Ind. 1998). In *United Wholesale LLC v. Traffic Jam Events*, 2012 WL 1988273, at *1 (N.D. Ill. June 4, 2012), this Court, in granting plaintiff's motion for jurisdictional discovery (and denying without prejudice the motion to dismiss for lack of jurisdiction), summed up the jurisdictional discovery issue as follows:

> When personal jurisdiction over a defendant is challenged by way of a motion to dismiss under Federal Rules of Civil Procedure 12(b)(2), the plaintiff bears the burden of proving that jurisdiction exists and must make a prima facie case of jurisdiction. See *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002). A

court accepts as true the plaintiff's undisputed allegations, and disputes in the evidence are resolved in favor of jurisdiction. See, *e.g., Purdue Research Foundation v. Sanofi-Synthelabo, S.A*., 338 F.3d 773, 782 (7th Cir. 1982). However, the Seventh Circuit has cautioned that "once the defendant has submitted affidavits or other evidence in opposition to the exercise of jurisdiction, the plaintiff must go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction." *Id*. at 783. <u>Generally, jurisdictional discovery is justified if the plaintiff can show the factual record is at least ambiguous or unclear on the jurisdictional issue</u>. See, *e.g., Trading Technologies Inter., Inc. v. BCG Partners, Inc*., 2011 WL 1220013, at *3 (N.D. Ill. 2011); *Wells v. Hospital Group of Illinois, Inc*., 2003 WL 21704416, at *3 (N.D. Ill. 2003). <u>If the plaintiff establishes a prima facie case of personal jurisdiction, courts should permit it to conduct limited discovery to address the personal jurisdiction issue raised by a defendant's motion to dismiss</u>. See *Central States, Southeadt & Southwest Areas Pension Fund v. Phencorp Reinsurance Co*., 440 F.3d 870, 876-77 (7th Cir. 2006) (reversing trial court's refusal to grant jurisdictional discovery in response to defendant's motion to dismiss). In reaching this issue, the plaintiff is entitled to the resolution in its favor of all disputes, concerning relevant facts presented in the record. *Id*. at 878.

**B.      Plaintiff has established a *prima facie* case of personal jurisdiction against all of the Marketech Defendants and should be permitted to serve jurisdictional discovery upon the Marketech Defendants.**

Plaintiff has established a *prima* facie case of personal jurisdiction as to the Marketech Defendants. Plaintiff has alleged in the SAC that Marketech is a fax broadcaster as that term is defined in the FCC regulations. (SAC, Doc. 38, ¶ 17). Plaintiff has also alleged that Defendants Tessler and Kamenetsky are employed by Marketech, *id*. ¶¶ 19, 20, and that "Tessler and Kamenetsky had direct and personal participation in creating the opt-out notice for the Fax, handling the opt-out requests for the Fax, in the decision of sending the Fax, maintaining and using the database of recipient fax numbers to which the Fax was sent, and in determining the number and frequency of transmissions for the Fax," *id*. ¶ 34).

Plaintiff submits the additional factual information set forth above further establishes that Plaintiff should be permitted jurisdictional discovery in order to answer the statements in the Tessler and Kamenetsky Declarations and support the additional factual assertions.

9

The FCC regulations define the term "facsimile broadcaster" to mean "a person or entity that transmits messages to telephone facsimile machines on behalf of another person or entity for a fee." 47 C.F.R. § 64.1200(f)(7). The regulations further provide that a facsimile broadcaster will be liable for violations of the TCPA if the broadcaster "demonstrates a high degree of involvement in, or actual notice of, the unlawful activity and fails to take steps to prevent such facsimile transmissions." 47 C.F.R. § 64.1200(a)(4)(vii). In a 2006 ruling, the FCC stated:

> Under the current rules, a fax broadcaster also will be liable for an unsolicited fax if it demonstrates a high degree of involvement in, or actual notice of, the unlawful activity and fails to take steps to prevent such facsimile advertisements, and we will continue to apply this standard under our revised rules. If the fax broadcaster supplies the fax numbers used to transmit the advertisement, **for example**, the fax broadcaster will be liable for any unsolicited fax advertisements faxed to consumers and businesses without their prior express invitation or permission. We find that a fax broadcaster that provides a source of fax numbers, makes representations about the legality of faxing to those numbers **or advises a client about how to comply with the fax advertising rules, also demonstrates a high degree of involvement in the transmission of those fax advertisements**. In addition, we conclude that **a highly involved fax broadcaster will be liable for an unsolicited fax that does not contain the required notice and contact information**. In such circumstances, the sender and the fax broadcaster may be held jointly and severally liable for violation of the opt-out notice requirements.

*In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991; Junk Fax Prevention Act of 2005*, CG Docket Nos. 02-278, 05-338, Report & Order & Third Order on Reconsideration, 21 FCC Rcd 3787 (rel. Apr. 6, 2006) ("2006 Junk Fax Order") at ¶ 40 (emphasis added).

Plaintiff has alleged that Marketech is a fax broadcaster. Plaintiff intends to name Interfax as a highly involved fax broadcaster in this case. As set forth above, Marketech's website states that it searches on-line databases and joins associations, purchases trade show attendees list, and employs "any other tool necessary to make initial contact with your target profiles" and "and then creates and generates lists of target prospects." (Group Ex. A). These website assertions seem to be at odds with Tessler's statement that "Marketech does not create or

maintain any 'database' of fax recipients nor does it solicit any third party to do so on Marketech's behalf." (Tessler Decl. ¶ 8). Moreover, Kamenetsky is apparently employed by both Marketech and InterFax US. It is not much of a leap to the circumstance whereby Marketech and InterFax worked together to come up with the target list for the Fax (Marketech) and then transmitted the Fax (InterFax). At the very least, these facts are "at least ambiguous or unclear on the jurisdictional issue."

As to Tessler's and Kamenetsky's personal liability as to the fax advertising at issue, it is well established that a corporate officer may be held personally liable if they had direct, personal participation in, or personally authorized conduct which violates the TCPA. *Texas v. American Blastfax, Inc.,* 164 F. Supp. 2d 892, 898 (W.D. Tex. 2001). In *American Blastfax*, the court explained that individuals who violate the TCPA should not escape liability solely because they are corporate officers. *Id.* at 897. Likewise, the District of Columbia Superior Court, following the court's reasoning in *American Blastfax,* held that corporate officers are individually liable where they are clearly involved in the business practices involving the unsolicited faxes. *Covington & Burling v. Int'l Mktng. & Research, Inc.*, 2003 WL 21384825, at *6, 7 (D.C. Super. Apr. 16, 2003). *See also Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415-17 (D. Md. 2011) (holding that corporate officers may be personally liable under the TCPA if they directly participated in or authorized the statutory violations); *Arnold Chapman and Paldo Sign and Display Co. v. Wagener Equities and Daniel Wagener*, 2014 WL 540250, at *16-*17 (Feb. 11, 2014) (same).

At the very least, Plaintiff has alleged a *prima facie* case of specific personal jurisdiction. A court sitting in Illinois has specific personal jurisdiction over a nonresident defendant consistent with due process if two conditions are satisfied: the defendant must have (i) minimum

contacts with the state such that (ii) exercising personal jurisdiction does not offend traditional notions of fair play and substantial justice. *Asahi Metal Indus. Co. v. Superior Court of California*, 480 U.S. 102, 109 (1987) (citations omitted); *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). "To support an exercise of specific personal jurisdiction, the defendant's contacts with the forum state must directly relate to the challenged conduct or transaction; we therefore evaluate specific personal jurisdiction by reference to the particular conduct underlying the claims made in the lawsuit." *Tamburo*, 601 F.3d 693, 702 (7th Cir. 2010). "Specific personal jurisdiction is appropriate where (1) the defendant has purposefully directed his activities at the forum state or purposefully availed himself of the privilege of conducting business in that state, and (2) the alleged injury arises out of the defendant's forum-related activities." *Id.* at 702 (citation omitted); *Hyatt v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002); *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985).

In *Tamburo*, the Seventh Circuit noted the Supreme Court in *Calder v. Jones*, 465 U.S. 783, 790 (1984) suggests three requirements for personal jurisdiction where tortious conduct is alleged: (1) intentional conduct (or 'intentional and allegedly tortious' conduct); (2) expressly aimed at the forum state; (3) with the defendant's knowledge that the effects would be felt -- that is, the plaintiff would be injured -- in the forum state." *Id.* at 703 (citations omitted). With regard to minimum contacts, it is well established that "one who commits tortious acts against an Illinois business should reasonably anticipate being haled into court there." *Digital Merchant Systems, Inc. v. Oglesby*, 1999 WL 1101769, at *3 (N.D. Ill. Nov. 30, 1999), *citing World-Wide Volkswagon Corp. v. Woodson*, 444 U.S. 286, 297 (1980). Accordingly, "[a]llegations of tortious conduct directed at an Illinois business ... establish the minimum contacts necessary under the federal due process clause.'" *Id.* Moreover, "the state in which the injury (and therefore the tort)

occurs may require the wrongdoer to answer for its deeds even if events were put in train outside its borders." *Id., citing Janmark, Inc. v. Reidy*, 132 F.3d 1200, 1202 (7th Cir. 1997).

Here, it cannot be genuinely undisputed that the sending of the Fax attached to Plaintiff's SAC was intentional and Plaintiff is located in the forum state. Plaintiff alleges Marketech Defendants knowledge of the alleged injury in various paragraphs of Plaintiff's SAC. Plaintiff has sufficiently alleged conduct justifying jurisdictional discovery of the Marketech Defendants.

**C.    Defendants' Rule 12(b)(6) motion to dismiss should be denied because it contravenes the allegations in the SAC, and because Plaintiff will seek to file a Third Amended Complaint following jurisdictional discovery.**

If this Court is inclined to grant Plaintiff jurisdictional discovery, Plaintiff requests that the Court stay briefing on the Marketech Defendants' Rule 12(b)(6) motion as Plaintiff intends to seek leave to file a TAC setting forth, *inter alia*, the factual assertions made earlier in this memorandum, and any other pertinent facts obtained in jurisdictional discovery. Alternatively, for the reasons set forth below, the Marketech Defendants' Rule 12(b)(6) motion to dismiss should be denied.

The purpose of a motion to dismiss for failure to state a claim is "to test the sufficiency of the complaint, not to decide the merits." *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). A complaint may be dismissed only where there is no "reasonable expectation that discovery will reveal evidence" to support its claims. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007). The district court must take as true all factual allegations and draw all reasonable inferences in the plaintiff's favor. *Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618 (7th Cir. 2007). It is not enough that the district court suspect the plaintiff will ultimately "fail to find evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder." *Twombly*, 550 U.S. at 563 n.8. To survive a motion to dismiss,

the plaintiff need only make out a "plausible" case. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In the Seventh Circuit, "a party opposing a Rule 12(b)(6) motion may submit materials outside the pleadings to illustrate the facts the party expects to be able to prove." *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012) (citing *Thomas v. Guardsmark, Inc.*, 381 F.3d 701, 704 (7th Cir. 2004)). In *Geinosky*, the Seventh Circuit reversed a dismissal based, in part, on a newspaper article not mentioned in the complaint. *Id*. In contrast, if the defendant relies on "additional materials," then the motion "must be converted to one for summary judgment under Rule 56." *Id*. A plaintiff has "much more flexibility" on a motion to dismiss. *Id*. In *FTC v. AFD Advisors, LLC*, 2014 WL 274097, at *1 (N.D. Ill. Jan. 24, 2014), this Court applied *Geinosky* and denied a motion to dismiss based on additional materials illustrating the defendants' allegedly fraudulent conduct. Thus, the Court must consider any additional materials Plaintiff can muster in opposition to dismissal, regardless of whether they are referred to in the Complaint.

As set forth above, there are additional facts that support the allegations that the Marketech Defendants violated the TCPA. The Marketech Defendants' Rule 12(b)(6) motion to dismiss impermissibly seeks to contravene the allegations in the SAC, and in doing so, rely upon the Tessler Declaration, Ex. C, and the Kamenetsky Declaration, Ex. D. (See Def.s' Br. at 10-12). Among other things, Defedendants Tessler and Kamenetsky claim to have no personal involvement in this fax blasting at issue, and that Marketech does not contain the opt-out number of the fax at issue. Indeed, the Marketech Defendants argue in their 12(b)(6) motion that the allegations in the SAC are "inaccurate and contradicted by the sworn statements of Mr. Tessler, the CEO of Marketech." (Def.s' Br. at 11). That is not the basis of a motion to dismiss, but

14

instead a motion for summary judgment. On that basis alone, the Rule 12(b)(6) motion should be denied, or stayed pending jurisdictional discovery.

        **D.    Defendants' narrow "professional plaintiff" standing argument fails; Plaintiff has standing.**

The Marketech Defendants' claim the SAC should be dismissed because Plaintiff is purportedly a "professional plaintiff." In support of this argument, the Marketech Defendants cite to *Stoops v. Wells Fargo Bank, N.A.*, 197 F.Supp.3d 782, 805 (W.D. Pa. 2016).

First, the "professional plaintiff" argument, and the Marketech Defendants' reliance on Stoops, are disposed of in *Sandusky Wellness Ctr. v. MedTox Scientific, Inc.*, 2017 WL 1483330, at *3 (D. Minn. Apr. 25, 2017), wherein the court stated:

> The handful of TCPA cases that MedTox cites to the contrary can easily be distinguished. For example, in *Stoops v. Wells Fargo Bank, N.A.*, 197 F.Supp.3d 782 (W.D. Pa. 2016), the plaintiff "purchased at least thirty-five cell phones ... for the [sole] purpose of filing lawsuits under the [TCPA]." *Id*. at 788. The plaintiff admitted that she did not use these cell phones for any purpose except to fish for telemarketing calls. The court concluded that the plaintiff did not suffer a concrete injury when she got exactly what she sought—telemarketing calls. *See id. at 795-803*. Here, by contrast, Sandusky did not purchase a fax machine for the sole purpose of drumming up TCPA litigation. Instead, Sandusky used its fax machine for many business purposes, such as to process credit-card payments and to send and receive prescriptions and other "pertinent information."

In the instant case, Plaintiff also did not purchase a fax machine for the sole purpose of "drumming up" TCPA business. On the contrary, it was the Marketech Defendants that are alleged to have violated the TCPA by sending an unsolicited fax which, it is alleged, among other things, "occupied" Plaintiff's fax line, making it unavailable for legitimate business purposes, as well as the fact it cost Plaintiff toner and paper and wasted its time addressing the unsolicited fax. (SAC, Doc. 38 ¶ 34).

Second, the case law makes clear Plaintiff has standing under the TCPA. *See, e.g., Physicians Healthsource, Inc. v. A-S Medication Sols., LLC*, 2016 WL 5390952, at *5, n.3 (N.D.

15

Ill. Sept. 27, 2016); *Brodsky v. HumanaDental Ins. Co.*, 2016 WL 5476233, at *11 (N.D. Ill. Sept. 29, 2016) (Blakey, J.);*Heather McCombs, DPM, LLC v. Cayan LLC*, 2017 WL 1022013, at *4 (N.D. Ill. Mar. 16, 2017) (Durkin, J.).

**IV. Conclusion**

Wherefore Plaintiff requests this Court Order jurisdictional discovery depositions of Marketech Defendants, written jurisdictional discovery interrogatories and requests to produce of Marketech Defendants, and stay the briefing on the Marketech Defendants' Rule 12(b)(1) and 12(b)(6) motions to dismiss, or in the alternative, that the Court deny these motions for the reasons stated herein.

Respectfully submitted,

JT'S FRAMES, INC., individually and as the representative of a class of similarly-situated persons,

By: s/ Ross M. Good
       Ross M. Good

Brian J. Wanca
Ryan M. Kelly
Ross M. Good
**ANDERSON + WANCA**
3701 Algonquin Road, Suite 500
Rolling Meadows, IL 60008
Telephone: 847-368-1500
Fax: 847-368-1501
bwanca@andersonwanca.com
rkelly@andersonwanca.com
rgood@andersonwanca.com

## **CERTIFICATE OF SERVICE**

      I hereby certify that on June 14, 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all attorneys of record, and a copy will be served on the below listed Defendants via U.S. Mail.

    Jesse Casares
    Joe Casares
    Patricia Bezabaleta
    10900 Northwest Freeway,
    Suites 218 & 219
    Houston, TX 77092

                                                s/ Ross M. Good